**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AARON VANDIVER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.:** |
| | ) | |
| **QUANTUM DYNAMIX, LLC,** | ) | |
| **and MICHAEL WIJAS, individually and** | ) | |
| **d/b/a QUANTUM DYNAMICS 365,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, AARON VANDIVER, by and through his attorneys, S.T. LEGAL GROUP, who for his Complaint at Law against the Defendants, QUANTUM DYNAMIX, LLC, and MICHAEL WIJAS, individually and d/b/a QUANTUM DYNAMICS 365 alleges as follows:

NATURE OF ACTION

1.      This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, for the failure to pay minimum and overtime wages and retaliation; the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, for the failure to pay minimum and overtime wages; the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* for failure to pay wages and final compensation, unauthorized deductions, and retaliation; and the Chicago Minimum Wage ordinance, for failure to pay minimum and overtime wages and retaliation.

JURISDICTION

2.       Federal jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. and federal question jurisdiction under 28 U.S.C. § 1331 as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

VENUE

3.       Pursuant to 28 U.S.C. § 1391, venue lies in the Northern District of Illinois in that Plaintiff is a resident in this District, the Defendants are engaged in business in this District, and a substantial part of the alleged events or omissions giving rise to the claims occurred in this District.

PARTIES

4.       At all relevant times, the Plaintiff, AARON VANDIVER, was a resident of Chicago, Illinois.

5.       At all relevant times, the Defendant, QUANTUM DYNAMIX, LLC, was a limited liability company organized under the laws of the state of Illinois

6.       Upon information and belief, at all relevant times, the Defendant, MICHAEL WIJAS ("Wijas"), was a resident of Ivanhoe, Illinois and was a sole proprietor doing business as QUANTUM DYNAMICS 365.

7.       Wijas is and was involved in the day-to-day business operations of the Defendant, Quantum Dynamix LLC and has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and has the authority to participate in decisions regarding employee compensation and capital expenditures.

8.       Further, as a sole proprietor d/b/a Quantum Dynamics 365, Wijas is and was involved in the day-to-day business operations and has the authority to hire and fire employees,

2

the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and has the authority to participate in decisions regarding employee compensation and capital expenditures.

9. As the owner and manager of Defendant, Quantum Dynamix LLC, Wijas directly benefited and derived financial gain from Quantum's failure to pay its employees their wages and other compensation due in accordance with the applicable wage laws as described herein.

10. As a sole proprietor d/b/a Quantum Dynamics 365, Wijas directly benefited and derived financial gain from Quantum's failure to pay its employees their wages and other compensation due in accordance with the applicable wage laws as described herein.

BACKGROUND

11. In or around 2022, Plaintiff became employed by Defendants as Finance/T&L Solution Architect-D365 F&O.

12. During the course of his employment, Plaintiff performed nearly all work for Defendants while physically present in Chicago, Illinois.

13. Plaintiff was hired as a salaried employee at $170,000.00 annually, plus bonus, incentives and additional earning opportunities, and benefits including three weeks of annual paid vacation. This was communicated to the Plaintiff by an offer letter, which is attached hereto as **Exhibit A**.

14. Based on his duties at that time, Plaintiff was properly classified at hire as exempt from overtime pay, consistent with the federal Fair Labor Standards Act (FLSA) computer professional exemption.

15.     In January 2024, Defendants switched Plaintiff to hourly pay, initially offering $81.73/hour – equivalent to his prior $170,000 salary – but soon reducing it to $70.00. This was communicated, in part, to the Plaintiff by correspondence, attached hereto as **Exhibit B**.

16.     At the time he was switched to hourly pay, the Defendants also took away Plaintiff's ability to receive any paid time off or sick leave.

17.     Commencing in or around April 2024, Defendants failed to pay Plaintiff for all hours worked.

18.     The Defendants would only pay Plaintiff for approved client-billable hours.  The Defendants would not compensate the Plaintiff for any work performed that could not be billed to a client.

19.     Plaintiff's direct supervisor, Aaron Porter, and Defendant, Wijas, would review Plaintiff's timesheet and require that Plaintiff reduce the billable and nonbillable hours worked to the capped number approved for billable hours.

20.     When the Defendants processed Plaintiff's paycheck, his hours were again reduced based on a purported client issue with the work or the hours.

21.     On some occasions, Defendants delayed payment of Plaintiff's paycheck because the client had not yet paid them.

22.     Defendants did not pay Plaintiff any overtime wages despite the fact that he was no longer exempt.

23.     Plaintiff is owed approximately $47,000.00 for unpaid hours worked and overtime hours worked.

24.     Plaintiff complained to the Defendants on several occasions about the illegal payroll practices, but Defendants refused to properly address the situation.

4

25.     As a result of said complaints, the Defendants discriminated against and retaliated against Plaintiff by severely restricting Plaintiff's assignments and approved billable hours.

26.     On or about November 20, 2024, Plaintiff, through his attorney at the time, sent a correspondence to the Defendants regarding the illegal payroll practices and demanding payment of amounts owed.  A copy of this correspondence is attached hereto as **Exhibit C**.

27.     Approximately two days after receiving the November 20, 2024 correspondence, Defendants further retaliated against Plaintiff by terminating his employment.

### COUNT I – Violation of the Fair Labor Standards Act
### (Failure to Pay Minimum Wage and Overtime)

28.     The Plaintiff incorporates and adopts paragraphs 1 through 27 as if set forth herein fully as paragraph 28.

29.     At all relevant times, there was in effect the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq.

30.     During the course of employment, the Plaintiff was an "employee" as defined by 29 U.S.C. §203(e).

31.     During the course of employment, the Defendants were "employers" as that term is defined by 29 U.S.C. §203(d).

32.     At all relevant times the Defendants were employers or enterprises engaged in commerce or the production of goods for commerce within the definitions of 29 U.S.C. §203(s).

33.     The Fair Labor Standards Act (hereinafter "FLSA") requires employers to pay at least a minimum wage to employees.  29 U.S.C. §206(a)(1)(C).

34.     Further, section 207 of the FLSA provides that:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged

in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207.

35. Since approximately January 2024, the Plaintiff was not exempt from the provisions of the FLSA, including the overtime provisions.

36. At all times relevant, the Defendants directed the Plaintiff to work, and Plaintiff did work, in excess of forty hours in individual workweeks.

37. The Plaintiff was entitled to be paid at least minimum wage for all hours worked.

38. The Plaintiff was entitled to be paid overtime wages at "time and a half" for all time worked in excess of forty hours in individual workweeks.

39. In violation of the FLSA, the Defendants committed one or more of the following actions:

    a. Failed to compensate Plaintiff at his lawful overtime rate of pay for all hours worked in excess of forty hours per week;

    b. Failed to pay Plaintiff minimum wages;

    c. Failed to compensate Plaintiff for all hours worked; and

    d. Was otherwise in violation of the FLSA.

WHEREFORE, the Plaintiff, AARON VANDIVER, prays for judgment against the Defendants, QUANTUM DYNAMIX, LLC and MICHAEL WIJAS, d/b/a QUANTUM DYNAMICS 365, plus his costs of suit, statutory penalties, and attorney's fees.

### COUNT II – Violation of the Fair Labor Standards Act
### (Retaliation)

40. The Plaintiff incorporates and adopts paragraphs 1 through 27 as if set forth herein fully as paragraph 40.

6

41.     At all relevant times, there was in effect the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq.

42.     During the course of employment, the Plaintiff was an "employee" as defined by 29 U.S.C. §203(e).

43.     During the course of employment, the Defendants were "employers" as that term is defined by 29 U.S.C. §203(d).

44.     At all relevant times the Defendants were employers or enterprises engaged in commerce or the production of goods for commerce within the definitions of 29 U.S.C. §203(s).

45.     The FLSA provides that it shall be unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter…." 29 U.S.C. § 215.

46.     In violation of the FLSA the Defendants discriminated against and retaliated against Plaintiff because of his complaints of unlawful payroll practice and because he retained an attorney to assist him in obtaining his wages due and owing.

47.     Defendants discriminated and retaliated against Plaintiff by reducing his hours, severely restricting his assignments and approved billable hours and ultimately terminating his employment.

48.     As a result of the aforesaid retaliation, Plaintiff has suffered damages of lost wages and attorneys' fees and costs.

WHEREFORE, the Plaintiff, AARON VANDIVER, prays for judgment against the Defendants, QUANTUM DYNAMIX, LLC and MICHAEL WIJAS, individually and d/b/a QUANTUM DYNAMICS 365 plus his costs of suit, statutory penalties, and attorney's fees.

## COUNT III - Violation of Illinois Minimum Wage Act
### (Failure to Pay Minimum Wage and Overtime)

49.　　The Plaintiff incorporates and adopts paragraphs 1 through 27 as if set forth herein fully as paragraph 49.

50.　　At all relevant times, there was in effect the Illinois Minimum Wage Act, 820 ILCS 105/1, et. seq.

51.　　During the course of employment, the Plaintiff was an "employee" as defined by 820 ILCS 105/3.

52.　　During the course of Plaintiff's employment, the Defendants were "employers" as that term is defined by 820 ILCS 105/3.

53.　　During the course of Plaintiff's employment by Defendants, Plaintiff was not paid any wages for certain hours worked and hence was not paid minimum wage.

54.　　Defendants' failure to pay Plaintiff the minimum wage is in direct violation of the provisions of the IMWL. 820 ILCS 105/4(a)(1).

55.　　Pursuant to Section 4a of IMWA, "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed." 820 ILCS 105/4a.

56.　　Since approximately January 2024, the Plaintiff was not exempt from the provisions of the IMWA, including the overtime provisions.

57.　　At all times relevant, the Defendants directed the Plaintiff to work, and Plaintiff did work, in excess of forty hours in individual workweeks.

58.　　The Plaintiff was entitled to be paid overtime wages at 1½ times the regular rate of pay for all time worked in excess of forty hours in individual workweeks.

59.    In violation of the IMWA, the Defendants committed one or more of the following actions:

      a.    Failed to compensate the Plaintiff at his lawful overtime rate of pay for all hours worked in excess of forty hours week;

      b.    Failed to pay Plaintiff the minimum wage required;

      c.    Failed to compensate the Plaintiff for all hours worked; and

      c.    Was otherwise in violation of the IMWA.

60.    Pursuant to Section 12 of IMWA, "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 105/12.

61.    Defendants' failure and refusal to compensate overtime wages for hours worked in excess of forty hours per week was a willful violation of the IMWA.

WHEREFORE, the Plaintiff, AARON VANDIVER, prays for judgment against the Defendants, QUANTUM DYNAMIX, LLC and MICHAEL WIJAS, individually and d/b/a QUANTUM DYNAMICS 365 plus his costs of suit, statutory penalties, and attorney's fees.

### Count IV-Violation of the Illinois Wage Payment and Collection Act
### (Unpaid Wages and Unauthorized Deductions)

62.    The Plaintiff incorporates and adopts paragraphs 1 through 27 as if set forth herein fully as paragraph 62.

63.    At all relevant times, there was in effect in the State of Illinois the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et. seq.* (hereinafter "IWPCA").

64.     During the course of his employment with the Defendants, Plaintiff was an "employee" as defined by the IWPCA. 820 ILCS 115/2.

65.     During the course of the Plaintiff's employment, the Defendants were "employers" as defined by the IWPCA. *Id.*

66.     During the course of the Plaintiff's employment, Defendant, Wijas, individually, was an agent of an employer who knowingly permitted such employer to violate the provisions of the IWPCA, and therefore is deemed to be the employer of Plaintiff. 820 ILCS 115/13.

67.     Pursuant to the IWPCA, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned." 820 ILCS 115/4.

68.     The IWPCA also prohibits deductions by employers from wages or final compensation unless the deductions are made with the express written consent of the employee given freely at the time of the deduction. 820 ILCS 115/9.

69.     Pursuant to the IWPCA, upon separation, "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

70.     In violation of the IWPCA, the Defendants:

    a.  failed to timely pay Plaintiff his final compensation;

    b.  failed to timely pay Plaintiff all wages earned;

    c.  made deductions from Plaintiff's paychecks without his written consent; and

    d.  was otherwise in violation of the IWPCA.

WHEREFORE, the Plaintiff, AARON VANDIVER, prays for judgment against the Defendants, QUANTUM DYNAMIX, LLC and MICHAEL WIJAS, individually and d/b/a

QUANTUM DYNAMICS 365, plus costs of suit, statutory penalties, attorneys' fees and any other relief as this Court deems just.

### Count V-Violation of the Illinois Wage Payment and Collection Act
### (Retaliation)

71.     The Plaintiff incorporates and adopts paragraphs 1 through 27 and 62 through 70 as if set forth herein fully as paragraph 71.

72.     The IWPCA prohibits an employer, or any agent of an employer from discharging or discriminating against any employee because that employee has made a complaint to his or her employer that he or she has not been paid in accordance with the provisions of the Act.  820 ILCS 115/14.

73.     The Defendants discriminated against and retaliated against Plaintiff because of his complaints that he has not been paid in accordance with the Act.

74.     Defendants discriminated and retaliated against Plaintiff by reducing his hours, severely restricting his assignments and approved billable hours and ultimately terminating his employment.

75.     As a result of Defendants' discrimination and retaliation, Plaintiff has suffered, and continues to suffer, harm and damages, including but not limited to, lost wages, statutory penalties, and attorneys' fees and costs.

WHEREFORE, the Plaintiff, AARON VANDIVER, prays for judgment against the Defendants, QUANTUM DYNAMIX, LLC and MICHAEL WIJAS, individually and d/b/a QUANTUM DYNAMICS 365, plus costs of suit, statutory penalties, attorneys' fees and any other relief as this Court deems just.

## COUNT VI - Violation of Chicago Minimum Wage Ordinance
### (Failure to Pay Minimum Wage and Overtime)

76.     The Plaintiff incorporates and adopts paragraphs 1 through 27 as if set forth herein fully as paragraph 76.

77.     At all relevant times there was in effect the Chicago Minimum Wage Ordinance ("CMWO"). Chicago Municipal Code, § 6-105-010 *et seq*.

78.     During the course of employment, the Plaintiff was a "covered employee" as defined by the CMWO.

79.     During the course of Plaintiff's employment, the Defendants were "employers" as defined by the CMWO.

80.     Pursuant to Section 6-105-020 of the CMWO, "every Employer shall pay to each Covered Employee for each hour of work performed for that Employer, no less than the greater of: (1) the minimum hourly Wage set by the Minimum Wage Law; (2) the minimum hourly Wage set by the Fair Labor Standards Act; or (3) the City's minimum hourly Wage."

81.     The CMWO provides that "the Wages set out in Sections 6-105-020 are subject to the overtime compensation provisions in the Minimum Wage Law, with the exception that the definitions of "Employer" and "Employee" in this chapter shall apply."

82.     At all times relevant, the Defendants directed the Plaintiff to work, and Plaintiff did work, in excess of forty hours in individual workweeks.

83.     The Plaintiff was entitled to be paid minimum wage for all hours worked.

84.     The Plaintiff was entitled to be paid overtime wages at 1½ times the regular rate of pay for all time worked in excess of forty hours in individual workweeks.

85.      In violation of the CMWO, the Defendants committed one or more of the following actions:

a.       Failed to compensate the Plaintiff at his lawful overtime rate of pay for all hours worked in excess of forty hours week;

b.       Failed to pay Plaintiff minimum wage for all hours worked; and

b.       Was otherwise in violation of the CMWO.

86.    Pursuant to Section 6-105-110 of CMWO, "[i]f any Covered Employee is paid by the Covered Employee's Employer less than the Wage to which the Covered Employee is entitled under this chapter, the Covered Employee may recover in a civil action three times the amount of any such underpayment, together with costs and such reasonable attorney's fees as the court allows."

WHEREFORE, the Plaintiff, AARON VANDIVER, prays for judgment against the Defendants, QUANTUM DYNAMIX, LLC and MICHAEL WIJAS, individually and d/b/a QUANTUM DYNAMICS 365 plus his costs of suit, treble damages, statutory penalties, and attorney's fees.

Respectfully Submitted,

_____
Diana C. Servos
Attorney for the Plaintiff

Diana C. Servos (4994471)
S.T. Legal Group
1020 Milwaukee Avenue, Suite 335
Deerfield, Illinois 60015
Phone: (847) 654-9200
Email: DServos@stlegalgroup.com

# **EXHIBIT A**

DocuSign Envelope ID: 3D4E8782-5460-4F1B-B085-B657E2B2D1CA



100 S. Saunders, Suite 150
Lake Forest, IL 60045
Ph: (847) 603-8900
Fax: (847) 603-8901
quantumdynamics365.com

November 14, 2022

Aaron L. Vandiver
1504 N Western Ave Unit 2N
Chicago, Illinois 60622

Dear Aaron:

I am excited to offer you the opportunity to join Quantum Dynamics in the position of Solution Architect reporting to Aaron Porter as your manager. You will assume and discharge such responsibilities as are commensurate with such position and as your manager may direct. During the term of your employment, you shall devote your full time, skill and attention to your duties and responsibilities and shall perform them faithfully, diligently and competently. In addition, you shall comply with and be bound by the operating policies, procedures and practices of Quantum in effect during your employment.

Your assigned work location will vary depending on your project assignment, and that will generally be your home office, a client office, or a Quantum Dynamics office. You will have a planned start date of November 16, 2022 (or similar as mutually agreed), and I trust you will treat the details of this offer with utmost confidentiality.

As a Quantum Dynamics employee, your compensation and benefits package will be as follows:

**Base Salary**  Your salary will be $170,000 per year payable two times per month. Quantum currently performs annual merit reviews in early January, for the prior calendar year. Eligibility for a salary review is based upon your date of hire, performance, overall business need, and market conditions. In addition to your base compensation, you will be eligible for a bonus plan which is based on weekly billable hours, along with other paid incentives applicable to all employees.

**Health Benefits**  You will be eligible to enroll in Quantum's health benefit programs, which currently includes medical, dental and life insurance from a top-rated insurance provider. There is a waiting period for enrollment which is applicable to all new hires, which is satisfied on the first of the month after 60 days of employment.

**401(k)**  You will be eligible to enroll in Quantum's 401(k) plan, which currently includes 28 top rated investment choices, as well as the option of a standard or Roth deferral. There is a waiting period for enrollment which is applicable to all new hires, which is satisfied after three months of employment.

**Vacation**  You will receive a non-standard vacation allotment of 15 days of vacation upon hire, subject to our normal accrual guidelines. In order to make vacation days available to you from your date of hire, Quantum may allow you to take a vacation credit from your annual allotment, in advance of actually accruing such vacation. In the event your employment terminates before you have accrued all the vacation days you have actually used, you agree that Quantum may

withhold and deduct from your final paycheck the pay associated with the vacation days used, but not accrued. Likewise, in the event you used more vacation than can be deducted from your final paycheck, you agree to return to Quantum the pay associated with any unearned vacation.

**Additional Benefits**     You will be provided a Quantum Dynamics owned laptop and accessories for use during the term of your employment. We may offer additional benefits (or modify existing benefits) in the future at Quantum's sole discretion.

**Terms**     This offer letter is not a contract of employment for any specific or minimum term. The employment Quantum offers you is terminable at will. This means that our employment relationship is voluntary and based on mutual consent. You may resign your employment, and Quantum likewise may terminate your employment, at any time, for any reason, with or without cause or notice. However, we respectfully request that should you decide to resign your employment with Quantum, that you provide 14 days written notice. Any prior oral or written representations to the contrary are void, and any future representations to the contrary are also void and should not be relied upon unless they are contained in a formal written employment contract signed by an officer of Quantum and expressly stating the company's intent to modify the at-will nature of your employment.

This offer is contingent on you providing Quantum with proof of U.S. citizenship or legal authorization to work in the United States, the successful completion of a background check, and you entering into a standard Business Protection Agreement with Quantum. These are the same requirements in place for all Quantum employees. Additionally, Quantum may ask you to begin training prior to your official start date so that you may be considered for upcoming engagements. If the terms outlined in this letter are acceptable, please sign via DocuSign.

I look forward to your contribution to the success of Quantum and hope you will agree to join us! Should you have any questions, please email me at mike@quantumdynamics365.com, or call me on my cell at 847-910-1090. If we do not receive a signed acceptance from you within 2 days of the date of this letter, then this offer may be withdrawn. Please confirm your acceptance at your earliest convenience.

Sincerely,                                                      ACCEPTANCE:

*Michael Wijas*                                                  *Aaron Vandiver*
                                                                 79004A2AA2D0435...
Michael Wijas,                                                  _____
Managing Partner                                               Signature
Quantum Dynamics
                                                                 11/15/2022
                                                                _____
                                                                 Date

QUANTUM DYNAMICS

# **EXHIBIT B**

**kszarwark@stlegalgroup.com**

| | |
|---|---|
| **From:** | Michael Wijas |
| **Sent:** | Monday, January 1, 2024 5:01 PM |
| **To:** | Aaron Vandiver |
| **Cc:** | Aaron Porter |
| **Subject:** | New Approach |
| **Importance:** | High |

Aaron,

As we have discussed in the past on multiple occasions, Aaron Porter and I have been hopeful that the ongoing performance issues, challenges with completing your tasks in a timely manner, and unplanned absences were behind us. Likewise, administrative tasks, including timesheet entry and Activity Manager updates have also been chronic issues for you. While things have improved over the past couple of months, it seems there was a step backward over the past couple of weeks, which I was disappointed to hear.

We are still hopeful things can improve and that you can meet the basic expectations that we have for all employees, but we can no longer continue within the current structure. We have determined that the best approach at this time is to move you from salaried-based compensation to hourly-based compensation, effective today, January 1st. Moving forward you will be paid based on your approved client-billable hours at a rate of $81.73. Should any client dispute any of your time, for which you cannot reasonably defend/justify, we may deduct disputed hours from future earnings. As an non-salaried employee with hourly-based compensation, you will no longer be eligible for paid time off of any type. If your billable hours drop below a certain threshold, you may no longer be eligible to participate in our company-sponsored health insurance. I need to check into this further on this threshold and will let you know. Moving forward, if you wish to take time off, or are unable to work for any reason, that can likely be accommodated (since you will not be paid for it), as long as it doesn't negatively impact client commitments. However, you will still need to let Aaron Porter know in advance. Additionally, if your timesheets are not submitted by the deadline each week (midnight Sunday), that may result in a delay of processing your payroll, as we will not be able to process your payroll moving forward without having your hours submitted and approved.

The hourly rate as calculated at your prior salary of $170,000 divided by the standard weekday hours of 2080. It is worth noting that you can potentially make more than your prior salary (by billing more than 40 hours in a week), which is a potential upside for you with this new structure.

Aaron Porter will continue to monitor your performance moving forward, and if things significantly improve, we are happy to reevaluate this and potentially return you to a salaried position.

Please reply with your acknowledgement.
.

**Michael Wijas |** Managing Partner



Office: 847-603-8900
Mobile: 847-910-1090
mike@quantumdynamics365.com
quantumdynamics365.com

# **EXHIBIT C**

## Law Office of Lori A. Goldstein, LLC

CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY

November 20, 2024

<u>Via Email</u>

Michael Wijas, Managing Partner
Quantum Dynamics 365
100 S. Saunders Road, Suite 150
Lake Forest, IL 60045

      Re: <u>Aaron Vandiver</u>

Dear Mr. Wijas:

      I have been retained by Aaron Vandiver in connection with his employment with Quantum Dynamics 365 ("Quantum.") Based on my review of his relevant work history at the company and related documents and communications, there are serious concerns regarding misclassification of overtime exempt status, unpaid work time and overtime in violation of federal and state laws, and failure to provide paid leave per Chicago law. Finally, the company has assigned little to no work to Mr. Vandiver for the past several weeks in a clear attempt to push him out in retaliation for questioning the pay practices. Our goal is to achieve an amicable and confidential resolution without pursuing formal legal action.

      Below are the relevant facts, the basis of our concerns, and our resolution proposal; relevant documents and calculations are available. Please send a copy of my client's personnel records, pursuant to the Illinois Personnel Records Review Act. Finally, please preserve all documents and electronic files relating to my client per applicable legal requirements.

<u>Valuable Hire and Contributions</u>

      The company was keenly aware of Mr. Vandiver's credentials and experience when you hired him to work in Chicago as Finance/T&L Solution Architect - D365 F&O in 2022. He was serving as Solution Architect - D365 F&O, at Microsoft Corporation when he left to join Quantum Dynamics. Mr. Vandiver had worked for more than 5 years

in past roles for, and also held several key roles with other companies in the D365/F&O space, including Avanade. He has a Bachelor's degree in Accounting and a Master's degree in Management Information Systems. A copy of his resume is attached.

My client has had multiple accomplishments and added value to Quantum. Too many to mention, these include:

- Serves as D365 expert working simultaneously with many different customers on D365 upgrade implementations, and on customer support.

- Helps customers design solutions to meet their business needs, including creating the functional design documents and configuring D365 to accommodate customer requirements.

- Acts as an advisor to customers, making recommendations D365 implementation and resolving issues arising during implementations and operation of the live D365 application.

- Leads the Finance/Accounting workstream on projects.

- Acts as the overall functional lead on projects, making sure the cross-functional solutions from different workstreams work together to deliver the customer a seamless ERP solution.

- Assists customers with the implementation of GL, AR, AP, Cash and Bank, Fixed Assets, multicurrency, consolidation, landed cost, product costing, inventory valuation, Inventory migration and migration of open GL balances and on-hand inventory during go-live cutover.

- Contributes extensive knowledge in other areas of the application, such as T&L, SCM, project accounting as well as data migration, and system integration.

- Supports customers in designing their COA, financial dimensions, and GL posting rules (Account Structures) to make sure customers can report on the important information.

- Gathers high level requirements during the presales process and translates them into a statement of work for an upgrade or new implementation of D365.

- Presents presales demonstrations of D365 to potential customers.

- Shares high level of experience using Azure DevOps and LCS during a project for a multitude of different purposes including project documentation, customer communication and more.

- Works with Dynamics CE (CRM) and with the process of integrating Dynamics ERP and CE using the dual-write solution from Microsoft.

- Manages and develops junior consulting resources on projects, overseeing their workload and reviewing finished assignments, and recommending ways to better complete tasks and interact with customers.

<u>Misclassification, Wage and Overtime Violations</u>

Mr. Vandiver was hired as a salaried employee at $170,000 annually, plus bonus, incentives and additional earning opportunities, and benefits including 3 weeks of annual paid vacation and unlimited paid sick time (offer letter attached.) In an email preceding the offer letter, the company touted it as "a very attractive offer, which is above the market average…(and that) we've had our top performing team members exceed $10,000 (annually) in performance-based bonus earnings."

Based on his duties, my client was properly classified at hire as exempt from overtime pay, consistent with the federal Fair Labor Standards Act (FLSA) computer professional exemption. That meant that his salary was intended to cover his work time, regardless of the number of hours worked and even if they exceeded 40 hours/week.

However, in January 2024, the company switched Mr. Vandiver to hourly pay (initially offering $81.73/hour – equivalent to his prior $170,000 salary – but soon reducing it to $70.)  In order to lawfully classify an hourly computer professional as exempt from overtime pay, an employer must pay the employee a minimum $27.63/hour for all hours worked (see Department of Labor fact sheet attached.) The statute and regulations do not distinguish between "billable" and "nonbillable" hours. Notably, in an email to my client, you told him that with the change, he "can potentially make more than your prior salary (by billing more than 40 hours in a week.)"

But since late April, Quantum has been violating the FLSA and parallel Illinois wage and overtime laws by not paying my client for all hours worked. Specifically, the company's policy and practice of paying only for approved client-billable hours is not lawful for an hourly computer employee. The company cannot force my client to reduce his accurately reported hours, or change reported time records. Nor can Quantum deduct, hold back or otherwise refuse to pay for non-client billable hours, or for billable hours worked that management or clients feel were excessive or unreasonable or exceed a

budgeted cap (even if the caps have been realistic, which evidence shows they aren't here, and even if there was evidence that a client challenged hours/fees.)

The company's pattern is that Mr. Vandiver's direct supervisor, Aaron Porter, reviews his timesheet and requires my client to reduce the billable and nonbillable hours worked to the capped number approved for billable hours. Then when the paycheck is processed, you issue an additional holdback of hours that you attribute to purported client issues with the work or hours.

Incredibly, Quantum failed to credit or pay Mr. Vandiver for at least 100 hours that he worked for company client FAF. One timesheet with 53.5 (billable) hours reported was reduced to 0. On some occasions, Quantum held back payment because the company had not yet received payment from the client and the client was purportedly disputing the number of hours. But Mr. Vandiver is not paid on a commission basis and his compensation is not conditioned on client payment.

The company owes my client for all of the hours he has worked since April for which he has not been compensated. Not only is he due $70 for unpaid hours up to 40/week, but because Quantum did not comply with the FLSA exemption requirements, Mr. Vandiver has been misclassified as an exempt employee. He is therefore owed another $35/hour (half-time) for weekly hours exceeding 40 for which he only received straight time ($70.) To the extent the company has made deductions from his paychecks without Mr. Vandiver's written consent, Quantum also failed to comply with the Illinois Wage Payment and Collection Act (IWPCA.)

Mr. Vandiver has calculated that he is owed at least $40,000 for work hours and overtime that the company declared as, or changed to, "unbillable" and $7000 for billable hours worked and held back. Paystubs and timesheets (available on request) show many billable and nonbillable hours unpaid, extensive time held back or deducted, and unpaid time off, all in violation of the applicable laws. Weekly hours over 40 were paid only at straight time.

<u>Complaints and Retaliation</u>

There are extensive email communications and payroll records evidencing the violations and Mr. Vandiver's complaints, and the company's refusal to resolve. As a result of his complaints, the company retaliated - for the past several weeks, the company has severely restricted my client's assignments and "approved billable hours" such that recent paychecks reflect 0 paid hours and compensation. The company's assigned billable work hasn't come close to the full-time, 40-hour+ week schedule that he worked prior to late April 2024, and was promised in his offer letter and the new arrangement in January 2024 . Although he has shifted to assisting colleagues and doing administrative tasks (as

evidenced by timesheets), he has not been paid for this "nonbillable" work. He has voiced concerns with the paychecks being "decimated by unbillable hours, lack of work, and additional hours being withheld, which has only led to further retaliation.

<u>Violation of Paid Leave Laws</u>

When the company switched Mr. Vandiver to hourly pay, you made him forfeit his accrued paid vacation and sick leave, no longer allowed him to accrue additional leave, and any time he has taken off has been unpaid. This violates my client's rights under the 2017 Chicago paid sick leave law, and as of July 1, 2024, the Chicago paid leave and sick leave ordinance, which provides employees working in Chicago accrual of 1 hour of paid leave and 1 hour of paid sick leave for every 35 hours worked.

<u>Legal Claims and Conclusion</u>

In a nutshell, Mr. Vandiver has been a stellar contributor to Quantum and has added significant value to the company. But the company has taken advantage of him by benefitting from his hard work and dedication and paying him little to nothing. The conduct has affected his ability to pay rent and bills. He cannot afford to work for pennies nor should he be penalized for asserting legal rights. But rather than follow the law and resolving Mr. Vandiver's complaints, Quantum has retaliated by reducing his assignments, work hours and compensation.

Based on the company's treatment of my client, Quantum faces serious legal and financial risk under the FLSA, Illinois Minimum Wage Law, and the IWPCA. The laws provide for unpaid work time and overtime, plus liquidated damages, penalties and payment of my client's attorneys' fees. The IWPCA also imposes individual officer liability. The company is also liable for failure to comply with the Chicago Paid Leave and Paid Sick Leave Act. Moreover, there are the company's own attorneys' fees, costs and staff time, and the risk and negative publicity associated with litigation.

<u>Proposal for Amicable Resolution</u>

Based on the history outlined above, the value added by my client, and potential legal claims, we believe that it is in the company's best interests to amicably resolve Mr. Vandiver's claims and avoid the risk, exposure, and expense. We propose the following terms in exchange for a release of claims:

- Payment of all unpaid work hours and overtime since January 2024 (per my client's calculations, $47,000);

- Reinstatement of any unused paid vacation and sick leave that was removed from Mr. Vandiver on January 1 and credit him for paid leave and sick leave that has accrued since then;

- Payment of my client's attorneys' fees;

- Assignment of future work in accordance with my client's full-time, 40-hour/week schedule; and

- Future compliance with wage, overtime and paid leave laws.

I look forward to hearing from you soon so that we can discuss and implement a prompt amicable resolution. Thank you in advance for your consideration.

Sincerely,

Lori A. Goldstein
Encs.